Raymond ABELN, et al., Appellants,

v.

The STATE TAX COMMISSION OF
MISSOURI, et al., Respondents.

No. 57575.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 12, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 26, 1990.

Application to Transfer Denied
Sept. 11, 1990.

Jerome Wallach, St. Louis, for appellants.

Timothy M. Joyce, Warrenton, for respondents.

GRIMM, Judge.

Appellant landowners dispute the tax assessment of several hundred lots in a lake development called Innsbrook Estates. The State Tax Commission found that landowners did not present substantial evidence to refute the county assessor's assessment. The circuit court affirmed.

On appeal, landowners contend they "presented substantial evidence of probative value which was adequate to rebut the presumptively valid assessments, whereas the County adduced no evidence to rebut [landowners'] evidence." We disagree. Landowners did not provide sufficient information to establish that the comparable property values they relied on were based on comparable property. We affirm.

Neither landowners or the County presented any witnesses to the Commission. Rather, by stipulation, the Commission received (1) landowners' appraisal prepared by Preston Banks and (2) the county assessor's property record cards on the properties. Further, the parties stipulated that (1) the landowners' appraiser did not do an on-site inspection of each property and (2) he utilized the assessor's improvement values. Thus, as landowners' attorney stated at the commission hearing, the

issue in this case is "the proper valuation of the land on the lots within this development."

■ "A presumption exists in favor of the correctness of the valuation of the tax assessor." *Hermel, Inc. v. State Tax Comm'n,* 564 S.W.2d 888, 895 (Mo. banc 1978). Substantial controverting evidence is required to obliterate the presumption. *Cupples Hesse Corp. v. State Tax Comm'n,* 329 S.W.2d 696, 702 (Mo.Div. 2 1959).

In attempting to justify lower values, landowners' appraiser prepared essentially a two-part report. In the first part of his report, the appraiser assumed a $10,000.00 per lot value for each of the approximately 135 unsold lots. Based on a historical average of 12 sales per year, he determined that it will take 11.25 years to sell these lots. Using other assumptions, he calculated that the present value of these lots is $5,845.46 per acre. Although he actually knew the lot size of only one-half of the lots, for purposes of his opinion, he assumed the other lots are one acre each.

In the second part of his report, the appraiser based his opinion on a "comparable sales" approach. For his comparables, the appraiser used sales from Oak View Estates. Oak View, 1.5 miles from Innsbrook, is a platted subdivision containing 61 lots.

Nothing in the appraiser's report, or the record, indicates Oak View is a lake development, or that a lake is available to its lot owners. The appraiser's report disclosed that Oak View's "roads are rock" and it has no sewers.

The landowners furnished sparse information to the Commission concerning both Innsbrook and Oak View. The record does not disclose the type roads in Innsbrook or whether sewers are available there. Nor does the record reflect whether the lots in the two areas are comparable in other respects.

■ The Commission has wide latitude in determining whether there is sufficient similarity in pertinent comparison factors for the sales prices of other lands to be of assistance in determining value. *Drey v. State Tax Comm'n,* 345 S.W.2d 228, 238 (Mo.Div. 1 1961). Some of the factors the Commission may consider to determine similarity of properties are the character, size, and location of the property sold, the uses to which it may be adapted, the market conditions under which it was sold, and whether the sale was an arm's length transaction. *See Id.* at 238, and *City of St. Louis v. Vasquez,* 341 S.W.2d 839, 850 (Mo. Div. 1 1960). Landowners presented insufficient evidence for the Commission to determine whether Innsbrook and Oak View were similar.

Here, as to the appraiser's opinion that each unsold lot had a value of $10,000.00, the Commission found that there "are no facts in the record to substantiate this value." As to the part of the report based on "comparables," the Commission found that there is not "sufficient evidence on the record to determine that the land, presented by [landowners] as comparable, is indeed comparable to the subject property." We agree.

In reviewing administrative factual determinations, this court must view evidence in a light most favorable to the agency's decision. *Hermel,* 564 S.W.2d at 894. This court's review is limited to a determination of whether the decision was supported by competent and substantial evidence, whether it was arbitrary, capricious, or unreasonable, or whether the Commission abused its discretion. *Id.*

■ An administrative decision which is based on substantial evidence, and reached by applying the correct law to the facts is not arbitrary and capricious (*Quincy Soybean Co., Inc. v. Lowe,* 773 S.W.2d 503, 505 (Mo.App.E.D.1989); *see also State ex rel. Swofford v. Randall,* 236 S.W.2d 354, 356–57 (Mo.App.W.D.1950)), or an abuse of discretion. *Quincy,* 773 S.W.2d at 505; *see also Hammack v. Missouri Clean Water Comm'n,* 659 S.W.2d 595, 600 (Mo.App.S. D.1983). Landowners failed to substantiate the appraiser's assumed $10,000.00 value assigned to unsold lots. The landowners also failed to provide sufficient information to establish comparable sales.

Thus, the landowners failed to overcome the presumption that the tax official was correct in his assessment.

The judgment is affirmed. ·

SATZ, P.J., and SMITH, JJ., concur.